**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**JOMAR IVORY,**

          **Plaintiff,**

          v.                         CASE NO. 09-3224-SAC

**ROGER WERHOLTZ,
SECRETARY OF CORRECTIONS,
et al.,**

          **Defendants.**

**MEMORANDUM AND ORDER**

This civil rights complaint was filed pursuant to 42 U.S.C. § 1983, by an inmate of the El Dorado Correctional Facility, El Dorado, Kansas (EDCF). The named defendants are Roger Werholtz, Kansas Secretary of Corrections (SOC); Elizabeth Rice, Secretary of Corrections Designee; David McKune, Warden, Lansing Correctional Facility (LCF); Mr. Parks, Unit Team Manager, LCF; Mr. Beckham, "Unit Team Official", LCF; and Ms. Murray, Correctional Officer, LCF[1]. Plaintiff sues each defendant in his or her official and individual capacities.

**FACTUAL BACKGROUND AND CLAIMS**

As factual support for his complaint, Mr. Ivory alleges the following. On March 18, 2008, while confined at LCF, he filed a grievance claiming defendant Correctional Officer Murray was harassing him. On March 19, he was moved to D cellhouse, which was

---

[1] Plaintiff alleges in his complaint that the "state of Kansas is being sued;" however, the State is not named in the caption of the complaint and is not listed as a defendant. In any event, the State has absolute immunity from suit for money damages. For these reasons, the State of Kansas is not considered a defendant in this action.

Murray's "assigned post". Defendant Parks spoke to plaintiff in an attempt to resolve the grievance, but plaintiff was not satisfied and his grievance was forwarded to Warden McKune. On that day, Murray threatened plaintiff for filing the grievance. On March 20, Murray searched plaintiff's cell, found "some miscellaneous items", and wrote four disciplinary reports against plaintiff. Plaintiff believes Murray was retaliating for his having written the grievance. On March 24, plaintiff "filed an emergency grievance against" Murray because another inmate overheard her say she was "going to get Ivory for putting that grievance on (her);" however he does not exhibit this grievance. On April 2, plaintiff was moved to a cell right next to the "Officer lock box." While plaintiff was looking out the cell bars awaiting lunch, he "observed CO Murray turn the video camera in the Officer's station." She then opened his cell door, and as he "stepped out on the tier" he was attacked and assaulted by two inmates and stabbed ten times. He claims defendant Murray moved the video camera so "it could not record the immediate area where the incident occurred", and "stood by and watched the attack." He ran back into his cell. A "signal 30" was called, and the response team "responded to the incident." Plaintiff was taken to the clinic and the Investigation and Intelligence unit photographed his stab wounds. He had wounds to his chest, back, shoulders, sides, and one above his left eye. He also "suffered a migraine headache."

Plaintiff quotes Internal Management Policy and Procedure (IMPP) 02-118, Rules of Conduct, as providing that KDOC employees must maintain a respectful and professional demeanor in dealing with offenders, and neither encourage nor participate in violent

2

confrontations.  He claims defendant Murray violated this regulation "by her constant harassment and unprofessional manner."  He claims she created a hostile environment by "conspiring with 2 inmates to set plaintiff up to get stabbed."  Plaintiff also quotes the KDOC Code of Ethics providing for employee conduct, and claims Murray violated it as well.  He further claims she "acted maliciously and sadistically when she opened plaintiff's cell door."

As Count 1, plaintiff cites the Fourteenth Amendment and alleges that defendants received his grievances making them "aware of the situation between CO Murray and plaintiff" but "still kept showing favoritism" knowing she was "breaking (KDOC) rules and regulations".  He claims this makes defendants co-conspirators with Murray in the stabbing.  In a final sentence, he claims Murray's "failure to intervene in the ongoing assault" amounted to "deliberate indifference" in violation of Fourteenth Amendment due process.

As Count 2, plaintiff quotes the Eighth Amendment and claims defendants, including the SOC, failed to properly investigate "the incident of CO Murray (sic) harassment of plaintiff."  He also claims "Murray inflicted cruel and unusual punishment" because plaintiff was exercising his First Amendment right.

In his request for relief, plaintiff also makes a conclusory claim of denial of equal protection.  He does not explain how this constitutional provision was violated or provide any facts establishing the elements of such a claim[2].  As noted, he also mentions his First Amendment rights, but does not explain how, or

---

[2] Unless plaintiff alleges additional facts to support a claim of denial of equal protection, this claim will be denied.

3

even allege that, they were violated.

Mr. Ivory requests an award of money damages for conspiracy and gross negligence for refusing to investigate the grievances of "continual harassment." He also seeks punitive damages.

Plaintiff alleges he has exhausted administrative remedies.

**MOTION TO PROCEED WITHOUT PREPAYMENT OF FEES**

Plaintiff has filed a motion for leave to proceed in forma pauperis (Doc. 2), and has attached an Inmate Account Statement in support as statutorily mandated. Under 28 U.S.C. § 1915(b)(1), a plaintiff granted such leave is not relieved of the obligation to pay the full fee of $350.00 for filing a civil action. Instead, being granted leave to proceed in forma pauperis merely entitles an inmate to proceed without paying the full fee up front, and to pay the filing fee over time through payments deducted automatically from his inmate trust fund account as authorized by 28 U.S.C. § 1915(b)(2). Furthermore, § 1915(b)(1) requires the court to assess an initial partial filing fee of twenty percent of the greater of the average monthly deposits or average monthly balance in the prisoner's account for the six months immediately preceding the date of filing of a civil action. Having examined the records of plaintiff's account, the court finds the average monthly deposit to plaintiff's account is $ 56.83, and the average monthly balance is $ 17.18. The court therefore assesses an initial partial filing fee of $ 11.00, twenty percent of the average monthly deposit, rounded to the lower half dollar. Plaintiff must pay this initial partial filing fee before this action may proceed further, and will be given time to submit the fee to the court. His failure to pay the

assessed partial fee in the time allotted may result in dismissal of this action without further notice.

**MOTION FOR APPOINTMENT OF COUNSEL**

Plaintiff has also filed a Motion for Appointment of Counsel (Doc. 3). There is no constitutional right to appointment of counsel in a civil case. Durre v. Dempsey, 869 F.2d 543, 547 (10th Cir. 1989); Carper v. Deland, 54 F.3d 613, 616 (10th Cir. 1995). Thus, the decision whether to appoint counsel lies in the court's discretion. Williams v. Meese, 926 F.2d 994, 996 (10th Cir. 1991). The burden is on the applicant to convince the court that there is sufficient merit to his claims to warrant the appointment of counsel." Steffey v. Orman, 461 F.3d 1218, 1223 (10th Cir. 2006), *citing* Hill v. SmithKline Beecham Corp., 393 F.3d 1111, 1115 (10th Cir. 2004). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." Steffey, 461 F.3d at 1223, *citing* Rucks v. Boergermann, 57 F.3d 978, 979 (10th Cir. 1995). In deciding whether to appoint counsel, the district court should consider "the merits of the prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." Rucks, 57 F.3d at 979; Hill, 393 F.3d at 1115. Considering the above factors, the Court concludes in this case that (1) it is not clear at this juncture that plaintiff has asserted a colorable claim; (2) the issues are not complex; and (3) plaintiff appears capable of adequately presenting facts and arguments. Thus, the Court denies plaintiff's motion for appointed counsel at this juncture. However,

5

this denial is without prejudice. At this stage of the litigation the primary issue before the Court is the legal sufficiency of plaintiff's allegations. Because no special legal training is required to recount the facts surrounding an alleged injury, pro se litigants may be expected to state such facts without any legal assistance. See Hall v. Bellmon, 935 F.2d 1106, 1109 (10th Cir. 1991). If this case progresses past screening, and it becomes apparent that appointed counsel is necessary, plaintiff may renew this motion.

**REQUEST FOR INJUNCTIVE RELIEF**

In his complaint, plaintiff requests an injunction, not against any allegedly ongoing unconstitutional act that is the basis for this lawsuit, but very generally to prevent defendants from harassing or retaliating against him for filing this action. This request appears to be purely speculative, and plaintiff alleges no facts whatsoever in support. The request is therefore denied because plaintiff has utterly failed to satisfy his burden of establishing those factors which are prerequisites to this court's grant of preliminary injunctive relief.

**SCREENING**

Because Mr. Ivory is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b). Having screened all

6

materials filed, the court finds portions of the complaint are subject to being dismissed for reasons that follow. Plaintiff will be given time to cure the deficiencies found in his pleading.

**LEGAL STANDARDS**

"To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution or law of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); Northington v. Jackson, 973 F.2d 1518, 1523 (10th Cir. 1992). An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. Trujillo v. Williams, 465 F.3d 1210, 1227 (10th Cir. 2006)(A defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established); Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996); Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993)(affirming district court's dismissal where "plaintiff failed to allege personal participation of the defendants"). "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." Fogarty v. Gallegos, 523 F.3d 1147, 1162 (10th Cir. 2008). To be held liable under § 1983, a supervisor must have personally participated or acquiesced in the complained-of constitutional deprivation. Meade v. Grubbs, 841 F.2d 1512, 1528 (10th Cir. 1988). An "affirmative link" must exist between the constitutional deprivation and "either the supervisor's personal participation, his exercise of control or direction, or his failure

7

to supervise."  Id. at 1527.  This link is satisfied if "a supervisor has established or utilized an unconstitutional policy or custom."  Id. at 1528.

A pro se complaint must be given a liberal construction.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, the court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

**FAILURE TO SHOW PERSONAL PARTICIPATION OF EACH DEFENDANT**

Plaintiff's summary of this case in his Motion to Proceed Without Prepayment of Fees is telling.  There he states: "Officer ordered a (sic) attack on inmate, violating civil rights."  It is also clear from the allegations in plaintiff's pleading that the main factual basis for his complaint is an alleged incident on April 2, 2008, in which plaintiff was assaulted and stabbed by two inmates in the presence of defendant Murray.  The court reiterates that Mr. Ivory claims defendant Murray violated his constitutional rights and is liable for his injuries because she harassed him, retaliated against him when he filed grievances against her, threatened him, conspired with the inmates to cause and facilitate the attack, and failed to intervene.  The factual allegations in the complaint against defendant Murray are sufficient to meet the notice pleading requirements under § 1983.  Of course, plaintiff will be required to prove these allegation, if this matter proceeds to trial.

In contrast, plaintiff's allegations against all other defendants fail to describe any personal acts showing their

8

participation in the alleged assault incident. The court thus finds that plaintiff alleges no facts indicating the personal participation of defendants Werholtz, Rice, McKune[3], Parks, or Beckman in the assault.

Instead, plaintiff appears to be attempting to assign liability to these defendants for his injuries from the assault in two different ways. First, he claims these uninvolved defendants were aware of facts prior to the assault that make them liable. In support, he implies that prior to the incident they were aware Murray was harassing him, but took no action. Second, he appears to claim that these defendants became aware of the assault incident after it occurred through the administrative grievance process, but failed to take appropriate action.

With regard to the first claim, plaintiff's factual, as opposed to his conclusory, allegations do not support a finding that any named defendant other than Murray was aware beforehand that Ivory was in danger or would be assaulted. His allegations that "prior to this" incident he made "repeated attempts" to show LCF officials that "a serious problem existed between Officer Murray and plaintiff," and that "LCF officials constantly refused to pay attention to "informal resolution and grievances" he "kept filing against CO Murray" are nothing but conclusory statements. His claim that Murray harassed him prior to the incident, though repeated throughout his pleading, is likewise not supported by anything other than his own conclusory statements.

---

[3] For example, his allegations that defendant McKune knew of Murray's misconduct, but did nothing, such as taking plaintiff "out of the hostile environment" are nothing but conclusory statements.

9

Plaintiff provides exhibits and dates of particular grievances filed by him, but none that was submitted earlier than March 18, 2008. The one submitted on that date was addressed to the Unit Team, who responded on March 21, 2008[4]. Therein, Mr. Ivory did not allege any facts showing he was in danger from Murray. The only "fact" he stated was that Murray had used "abusive profane language" while on duty. This factual allegation, taken as true, does not suggest Murray was a danger to him. Plaintiff added bald statements that he "truly believe(d)" if he were "moved to her walk" he "may be set up or targeted" because they have had "many combative communications." However, these statements were not supported by facts in his grievance, as the response reflects: "There is no documentation that you have had issues with Ms. Murray in the past . . . and no proof of any inappropriate actions by the officer." In addition, defendant Parks, the Unit Team member responding, noted plaintiff had spoken to CCII Beckham on March 18 regarding several other issues, and had not discussed mentioned Murray. On appeal, on March 25, 2008, the Warden found: "After an investigation by the Grievance Officer, and a complete review of the applicable documentation" it was determined the Unit Team Manager's response was appropriate and correct. The Warden further stated that plaintiff's allegations regarding COI Murray being unprofessional

---

[4] Plaintiff alleges defendant Unit Team Manager Parks was aware of the risk to plaintiff and was in a position to move plaintiff from the cellhouse where he was being harassed by Officer Murray, but did nothing. He claims Parks' deliberate inaction led to his being stabbed. He makes the same allegations with respect to defendant Beckham. These allegations are nothing but conclusory statements.

"could not be substantiated[5]."  Assuming these are the grievances plaintiff alleges imparted an awareness to the uninvolved defendants that he was in danger from Murray prior to the assault, the time frame in which they were submitted and their content undermines, rather than supports, his claim.  The court concludes that the sparse facts alleged by plaintiff and his exhibits utterly fail to indicate that any named defendant, other than Murray, had prior knowledge Mr. Ivory was in danger of being assaulted by inmates.  Furthermore, plaintiff does not specify what additional investigation should have been conducted prior to the assault incident, or explain how the administrative responses were inadequate, given their lack of factual content.

Plaintiff's exhibits of the grievance he initiated on November 27, 2008, are presumably offered to show the administrative response to the assault incident was insufficient.  In this grievance, filed after he had been transferred from LCF to the EDCF, he sought money damages based on the assault incident.  The response by "executive officer" Brett Peterson was: "this case has been investigated and is now in the hands of the Leavenworth County District Attorney's Office.  No further action will be taken at this time."

The purpose of a § 1983 action is not to provide judicial review of a decision rendered in an inmate grievance procedure, but to obtain redress for an alleged violation of federal law committed by state corrections officials.  <u>Woodford v. Ngo</u>, 548 U.S. 81, 113 (2006)(citing <u>Mitchum v. Foster</u>, 407 U.S. 225, 242 (1972)).

---

[5] Plaintiff also exhibits his appeal to the SOC of the denial of this grievance that he filed after the incident, and the response.  These exhibits contain no facts that show defendants were aware of impending danger.

11

Plaintiff claims defendant Werholtz violated his constitutional rights because he was aware of the grievance plaintiff filed regarding the stabbing incident, but "failed to take action" by terminating Officer Murray and refused to overturn the decision below. He further alleges that Werholtz abused his authority "in a fraudulent, malicious manner" by not taking action to have plaintiff immediately transferred to another facility. He makes the same allegations about defendant Rice. These allegations in no way demonstrate that either defendant Werholtz or Rice was aware of danger to Mr. Ivory prior to the assault. Nor do they state a federal constitutional claim of cruel and unusual punishment. At most, they are a challenge to the administrative decisions made after the incident. Plaintiff had no constitutional right to an immediate transfer and was eventually transferred. Nor does he have any federal constitutional right to certain employment action being taken against a correctional officer.

Plaintiff also seems to suggest that the uninvolved defendants are liable due to some policy. He repeatedly intones that the officials named as defendants were "authorized to establish and administer county policy" and acted as decision makers for the Department of Corrections (KDOC) and the State. He also spends a lot of time in his complaint citing cases and arguing against immunity for municipalities and "act(s) of official government policy." However, he fails to cite any specific unconstitutional policy or custom that a defendant promulgated and explain how it allowed the alleged assault to occur; or cite a policy they failed to follow that would have prevented the assault. The court finds plaintiff's allegations regarding the uninvolved defendants'

authority to establish and administer county policy and to act as decision makers utterly fail to indicate their liability for the alleged assault incident.

In sum, the court finds plaintiff has not alleged sufficient facts showing the direct personal participation in unconstitutional acts by defendants Werholtz, Rice, McKune, Parks, or Beckham. Plaintiff is given time to present additional facts to the court, which are sufficient. If he fails to provide those facts in the time allotted, this action will be dismissed as against all defendants other than defendant Murray.

**FAILURE TO ALLEGE SUFFICIENT FACTS TO STATE CLAIM OF CONSPIRACY**

Plaintiff makes the conclusory claim that all other defendants were co-conspirators with Murray in the stabbing. A plaintiff asserting a § 1983 conspiracy claim "must allege specific facts showing an agreement and concerted action amongst the defendants." Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998). "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." Id. For reasons previously stated herein, the court finds that none of plaintiff's allegations or exhibits implicate any defendant other than Murray in a conspiracy to assault plaintiff. Unless Mr. Ivory provides sufficient additional facts describing an actual agreement and concerted actions by each of the defendants, his claims of a conspiracy will be dismissed.

**IT IS THEREFORE ORDERED** that plaintiff's Motion for Appointment of Counsel (Doc. 3) is denied, without prejudice; and his request

for an injunction is denied (Doc. 1).

**IT IS FURTHER ORDERED** that plaintiff is granted thirty (30) days in which to submit to the court an initial partial filing fee of $ 11.00.  Any objection to this order must be filed on or before the date payment is due.  The failure to pay the fees as required herein may result in dismissal of this action without prejudice.

**IT IS FURTHER ORDERED** that within the same thirty-day period plaintiff must alleged additional facts sufficient to state a federal constitutional claim against defendants Werholtz, Rice, McKune, Parks, and Beckham, or show cause why this action should not be dismissed as against these defendants for the reasons stated in this Memorandum and Order.

**IT IS SO ORDERED**.

Dated this 19th day of November, 2009, at Topeka, Kansas.

<pre>
                                    s/Sam A. Crow
                                    U. S. Senior District Judge
</pre>